UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| KECO CAPITAL, LLC, A FOREIGN LIMITED LIABILITY COMPANY,<br><br>   Plaintiff,<br><br> vs.<br><br>AIDAN WONG, ADRIAN J. POSOZ, DEDRICK BARCINAS,  HERITAGE WEALTH HOLDINGS, LLC,<br><br>   Defendants. | CIV. NO. 24-00313 LEK-RT |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS PLAINTIFF KÉCŌ CAPITAL, LLC'S COMPLAINT**

   Before the Court is Defendants Aidan Wong ("Wong"),
Adrian J. Posoz ("Posoz"), Dedrick Barcinas ("Barcinas" and
collectively "Individual Defendants"), and Heritage Wealth
Holdings, LLC's ("Heritage Wealth" and collectively
"Defendants") Motion to Dismiss Plaintiff Capital, LLC's
Complaint ("Motion"), filed on September 20, 2024. [Dkt.
no. 24.] Plaintiff Kécō Capital, LLC ("Plaintiff") filed its
memorandum in opposition on November 22, 2024, and Defendants
filed their reply on November 27, 2024. [Dkt. nos. 31, 32.] The
Motion came on for hearing on December 13, 2024. At the Court's
request, Plaintiff filed a supplemental brief on December 17,
2024, [dkt. no. 35,] and Defendants filed a supplemental brief
on December 20, 2024, [dkt. no. 36]. For the reasons set forth

below, the Motion is granted in part and denied in part insofar as the claims against Heritage Wealth are dismissed with leave to amend for lack of personal jurisdiction; Counts I, II, III, VI, and VIII are dismissed with leave to amend; and Count IV against Barcinas is dismissed with leave to amend. The Motion is denied as to Count VII, and as to Count IV against Wong and Posoz. The Motion is granted as to Count V only to the extent that Plaintiff may not seek damages for Count V, and is denied as to Count V in all other respects.

## **BACKGROUND**

This action arises from the Individual Defendants' alleged taking of Plaintiff's confidential information and trade secrets, to divert business for the benefit of Heritage Wealth, a company Wong and Posoz formed. [Complaint, filed 7/25/24 (dkt. no. 1) at ¶ 1.] According to the Complaint, Wong and Posoz are residents of Hawai`i, and Barcinas is a resident of Nevada. [Id. at ¶¶ 3-5.] Heritage Wealth is a Wyoming limited liability company, whose members include Wong and Posoz. [Id. at ¶ 6.] Plaintiff is a foreign limited liability company organized under Delaware law and registered to do business in Hawai`i, as well as other states. [Id. at ¶ 2.] Plaintiff facilitates private lending to real estate investors. [Id. at ¶ 13.] The Individual Defendants were independent contractors for Plaintiff. See id. at ¶¶ 16-19.

2

Plaintiff alleges that it relies and places great value on proprietary and confidential information "such as its client and prospective client lists and data, its capital partner lists and data, and its strategies, processes, and tools to obtain the best rates and terms for its clients" ("Confidential Information"). Id. at ¶ 14; see also id. at ¶ 15. Plaintiff takes steps to keep its Confidential Information secret, including:

> (1) requiring, as a condition of any independent contractor relationship, that independent contractors promise not to use or disclose this information, except in the performance of their duties for [Plaintiff], (2) emphasizing to [Plaintiff] independent contractors the need to keep this information secret, and (3) not allowing former [Plaintiff] independent contractors to retain such information.

[Id. at ¶ 15.]

The Individual Defendants each executed an agreement with Plaintiff with a provision requiring them to protect and not divulge Plaintiff's Confidential Information. See id. at ¶ 19. The confidentiality provision of the independent contractor agreements Plaintiff executed with the Individual Defendants provides, in relevant part:

> The Contractor will not at any time or in any manner, either directly or indirectly, use for the personal benefit of the Contractor, or divulge, disclose, or communicate in any manner any Confidential Information. The Contractor will protect such information and treat the Confidential Information as strictly

3

> confidential. This provision shall continue to be
> effective after the termination of this
> Agreement. Upon termination of this Agreement,
> the Contractor will return to the Recipient all
> Confidential Information, whether physical or
> electronic, and other items that were used,
> created, or controlled by the Contractor during
> the term of this Agreement.

[Id.] Confidential information is defined as

> all non-public information which constitutes,
> relates or refers to the operation of the
> business of the Recipient, including without
> limitation, all financial, investment,
> operational, personnel, sales, marketing,
> managerial and statistical information of the
> Recipient, and any and all trade secrets,
> customer lists, or pricing information of the
> Recipient. The nature of the information and the
> manner of disclosure are such that a reasonable
> person would understand it to be confidential.

[Id.] Plaintiff alleges that over the course of its relationship

with the Individual Defendants it provided them with

Confidential Information, including trade secrets, and access to

its resources. [Id. at ¶¶ 20-21.]

On December 4, 2023, Wong and Posoz formed Heritage

Wealth. [Id. at ¶ 23.] Plaintiff alleges: in the following

months "Defendants used [Plaintiff]'s Confidential Information,

[Plaintiff]'s company resources and their roles and titles at

[Plaintiff] to divert business from [Plaintiff] to Heritage

Wealth," [id. at ¶ 24,] and "Defendants have engaged

[Plaintiff]'s customers and vendors on numerous occasions under

the guise of representing [Plaintiff] and that the loan

4

transaction would be brokered through [Plaintiff], when in reality, Defendants were brokering the loan through Heritage Wealth," [id. at ¶ 35]. Plaintiff alleges that, in December 2023, Wong and Posoz questioned Plaintiff's vice president about the specifics of a certain loan transaction the vice president was facilitating for the purchase of real estate in Oklahoma; Wong and Posoz received details of the transaction, including the terms offered to that client; and "Defendants then used that Confidential Information to undercut [Plaintiff], close the transaction on behalf of Heritage Wealth and secure the commission for Heritage Wealth." [Id. at ¶ 25.]

Plaintiff alleges: in February 2024 Wong "represented himself as [Plaintiff] Vice President of Loan Originations while facilitating a loan for the purchase of real estate in Kihei, Hawaii," but closed the transaction "on behalf of" Heritage Wealth, earning Heritage Wealth the commission. [Id. at ¶ 26.] In March 2024, Wong and Posoz told Plaintiff's leaders that they would transition away from Plaintiff, but instead they proceeded with Barcinas "to close several of their remaining transactions for the benefit of Heritage Wealth." [Id. at ¶¶ 27-28.] Examples include: (1) in March 2024, when Posoz closed a transaction for two purchases of real estate in Pahoa, Hawai`i, Posoz falsely stated Plaintiff waived its commission for the transaction and asked the client to send him a $4,000 commission fee; [id. at

5

¶ 29;] and (2) also in March 2024, Wong "closed a pending transaction for the purchase of real estate in Kihei, Hawaii," and, with Barcinas, secured the commission for Heritage Wealth, [id. at ¶ 30].

Regarding Posoz, Plaintiff alleges that on March 14, 2024, he "downloaded more than 8,000 files from [Plaintiff]'s servers, including but not limited to term sheets for [Plaintiff] transactions, [Plaintiff] client information and fee agreements, and documents regarding leads for potential [Plaintiff] clients. Mr. Posoz also deleted more than 400 files from [Plaintiff]'s servers." [Id. at ¶ 32.] Regarding Wong, Plaintiff alleges he disseminated Plaintiff's Confidential Information, "specifically [Plaintiff]'s confidential strategies, business methods and processes online through social media posts." [Id. at ¶ 34.]

Plaintiff sent Wong, Posoz, and Barcinas notices of termination on June 4, 2024. [Id. at ¶ 31.]

Plaintiff alleges: "Defendants continue to use [Plaintiff]'s Confidential Information, including trade secrets, to divert business from [Plaintiff] to Heritage Wealth. Further, Defendants continue to retain and use certain [Plaintiff] resources to conduct business for Heritage Wealth." [Id. at ¶ 33.] Plaintiff alleges its "total loan volume has drastically decreased" since December 2023, and as of May 2024, Plaintiff

experienced a 38.7% decrease in commissions, which "is, in large part, attributable to" Defendants' improper conduct. [Id. at ¶ 37.]

Plaintiff brings the following claims: a claim for violations of the Defend Trade Secrets Act ("DTSA"), Title 18 United States Code Section 1832 *et seq.*, against the Individual Defendants ("Count I"); [First Amended Complaint at ¶¶ 38-48;] a claim for misappropriating trade secrets in violation of the Hawai`i Uniform Trade Secrets Act ("HUTSA"), Hawai`i Revised Statutes Chapter 428B, and common law, against Defendants ("Count II"); [id. at ¶¶ 49-58;] a claim for conversion against Defendants ("Count III"); [id. at ¶¶ 59-64;] a claim for breach of contract against the Individual Defendants ("Count IV"); [id. at ¶¶ 65-70;] a claim for deceptive trade practices under the Uniform Deceptive Trade Practices Act ("UDTPA"), Hawai`i Revised Statutes Chapter 481A against Defendants ("Count V"); [id. at ¶¶ 71-75;] a claim for unfair methods of competition ("UMOC") under Hawai`i Revised Statutes Chapter 480 against Defendants ("Count VI"); [id. at ¶¶ 76-78;] a claim for tortious interference with prospective economic advantages against Defendants ("Count VII"); [id. at ¶¶ 79-84;] a claim for unjust enrichment against Defendants ("Count VIII"); [id. at ¶¶ 85-87;] and a claim for injunctive relief against Defendants ("Count IX"), [id. at ¶¶ 88-91]. Plaintiff seeks injunctive

relief, compensatory and consequential damages, punitive damages, prejudgment and post-judgment interest; attorneys' fees and costs; and any other appropriate relief. [Id. at pg. 22.]

Defendants argue the Complaint should be dismissed with prejudice for insufficient factual allegations pursuant to Federal Rule of Civil Procedure 12(b)(6), and the claims against Heritage Wealth should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for failure to establish personal jurisdiction. In addition, Defendants argue Counts III, IV, VII, and VIII must be dismissed because they are preempted, and the claim for damages in Count V must be dismissed because the UDTPA only authorizes injunctive relief. [Motion, Mem. in Supp. at 2.]

**STANDARDS**

**I.   Federal Rule of Civil Procedure 12(b)(2)**

In considering a motion brought under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, this Court has stated:

> A plaintiff has the burden of establishing personal jurisdiction over a nonresident defendant. See Love v. Associated Newspapers, Ltd., 611 F.3d 601, 608 (9th Cir. 2010); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff must establish personal jurisdiction over a defendant with respect to each claim. Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant." (citing Data Disc, Inc. v. Sys. Tech.

8

> Assocs., Inc., 557 F.2d 1280, 1289 n.8 (9th Cir. 1977))).
>
> When, as here, a district court acts on a motion to dismiss without holding an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Love, 611 F.3d at 608; Schwarzenegger, 374 F.3d at 800. Although a plaintiff may not simply rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true, and conflicts between parties over statements contained in affidavits or declarations must be resolved in the plaintiff's favor. See Love, 611 F.3d at 608; Schwarzenegger, 374 F.3d at 800.

Gallagher v. MaternityWise Int'l, LLC, CIV. NO. 18-00364 LEK-KJM, 2019 WL 961982, at *2 (D. Hawai`i Feb. 27, 2019) (quoting Barranco v. 3D Sys. Corp., 6 F. Supp. 3d 1068, 1076 (D. Hawai`i 2014)). Further, Plaintiff must demonstrate that the Court has personal jurisdiction over each of the defendants. See Rush v. Savchuk, 444 U.S. 320, 332 (1980) ("The requirements of International Shoe [Co. v. Washington, 326 U.S. 310 (1945)], however, must be met as to each defendant over whom a state court exercises jurisdiction.").

## II.  Federal Rule of Civil Procedure 12(b)(6)

This Court considers a motion to dismiss a complaint under the same standards applied on appeal. See In re Nektar Therapeutics Sec. Litig., 34 F.4th 828, 835 (9th Cir. 2022) ("We review de novo the district court's dismissal of the complaint." (citation omitted)).

> The court must accept all well-pleaded allegations as true. Lloyd v. CVB Fin. Corp., 811 F.3d 1200, 1205 (9th Cir. 2016). We also consider the complaint as a whole. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).
>
> To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Id.

"'Dismissal is appropriate when the complaint lacks a cognizable legal theory or sufficient factual allegations to 'support a cognizable legal theory.'" Saloojas, Inc. v. Aetna Health of Cal., Inc., 80 F.4th 1011, 1014 (9th Cir. 2023) (some internal quotation marks omitted) (quoting Beckington v. Am. Airlines, Inc., 926 F.3d 595, 604 (9th Cir. 2019)).[1]

## DISCUSSION

## I. Whether Counts III, VI, VII, and VIII Are Preempted

Defendants argue Plaintiff's claims for conversion, UMOC, tortious interference, and unjust enrichment (Counts III, VI, VII, and VIII) are preempted by the HUTSA because these

---

[1] The United States Supreme Court denied certiorari. 144 S. Ct. 1053 (2024).

claims are based on the same allegations that support Plaintiff's HUTSA claim. [Motion, Mem. in Supp. at 8-10.]

The HUTSA "codifies a cause of action for the misappropriation of confidential information, for which it provides both damages and injunctive relief." Moddha Interactive, Inc. v. Philips Elec. N. Am. Corp., 92 F. Supp. 3d 982, 989 (D. Hawai`i 2015) (some citations omitted) (citing HRS chapter 482B).[2] "[A]ll common law claims that are based upon the misappropriation of a trade secret are preempted." Id.

> The HUTSA "displaces conflicting tort, restitutionary, and other law[s] of [the State of Hawaii] providing civil remedies for misappropriation of a trade secret" except for (1) contractual remedies, whether or not based upon the misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret. HRS § 482B-8. The Hawaii Supreme Court held that the HUTSA's preemptive force reaches more than simply claims of or for appropriation of a trade secret, and that an analysis of the plaintiff's allegations is necessary to determine whether a claim is based upon misappropriation of a trade secret. BlueEarth Biofuels [LLC v. Hawaiian Elec. Co.], 235 P.3d [310,] 316-318 (Hawai`i 2010). Ultimately, the Hawaii Supreme Court adopted the "same proof standard" in determining the extent of HUTSA preemption. Id. at 318. Under the "same proof" test,
>
>> a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have

---

[2] The Federal Circuit affirmed. 654 F. App'x 484 (Fed. Cir. 2016).

> "misappropriated" a "trade secret" as those
> two terms are defined in the UTSA. Stated
> another way, if proof of a non-UTSA claim
> would also simultaneously establish a claim
> for misappropriation of trade secrets, it is
> preempted irrespective of whatever surplus
> elements or proof were necessary to
> establish it.

Id. at 315. . . .

Moddha Interactive, 92 F. Supp. 3d at 989–90 (some alterations
in Moddha Interactive).

Accordingly, civil claims such as conversion, UMOC,
tortious interference, and unjust enrichment are preempted
unless they are based upon a broader array of conduct than just
the misappropriation of confidential information. Because
Plaintiff concedes its conversion, UMOC, and unjust enrichment
claims as currently alleged are preempted but Plaintiff argues
it can cure the defects by amendment, see Mem. in Opp. at 4-8,
the Court dismisses those claims with leave to amend. See Hoang
v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018).

However, Plaintiff argues its tortious interference
claim is not preempted because the claim is based on bait-and-
switch tactics used to divert Plaintiff's potential customers to
Heritage Wealth, and not misappropriation of confidential
information. [Mem. in Opp. at 8-9.] To establish a tortious
interference claim, a plaintiff must show:

> (1) the existence of a valid business
> relationship or a prospective advantage or

> expectancy sufficiently definite, specific, and
> capable of acceptance in the sense that there is
> a reasonable probability of it maturing into a
> future economic benefit to the plaintiff;
> (2) knowledge of the relationship, advantage, or
> expectancy by the defendant; (3) a purposeful
> intent to interfere with the relationship,
> advantage, or expectancy; (4) legal causation
> between the act of interference and the
> impairment of the relationship, advantage, or
> expectancy; and (5) actual damages.

Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113

Hawai`i 251, 267-68 n.18, 151 P.3d 732, 748-49 n.18 (2007)

(citation omitted).

Plaintiff realleges in this count the following

allegation: "Defendants have engaged [Plaintiff]'s customers

. . . on numerous occasions under the guise of representing

[Plaintiff] and that the loan transaction would be brokered

through [Plaintiff], when in reality, Defendants were brokering

the loan through Heritage Wealth." [Complaint at ¶ 35; id. at

¶ 79 (realleging the preceding paragraphs in Count VII).]

Plaintiff alleges misconduct by Defendants that goes beyond

misappropriation of information, thereby avoiding preemption by

the HUTSA and dismissal on that basis.

Accordingly, the Motion is granted in part and denied

in part insofar as Counts III, VI, and VIII are dismissed with

leave to amend. The Motion is denied as to Count VII.

13

## II.  **Remaining Claims Against Heritage Wealth**

The remaining claims against Heritage Wealth are
Count II (the HUTSA claim), Count V (deceptive trade practices),
Count VII (tortious interference), and Count IX (injunctive
relief). Defendants argue Plaintiff does not allege sufficient
facts to support personal jurisdiction – either general or
specific jurisdiction - over Heritage Wealth. Specifically,
Defendants argue Plaintiff has not alleged Heritage Wealth
conducted business in Hawai`i, purposefully directed its
activities toward Hawai`i, or identified any specific business
transactions or tortious acts by Heritage Wealth that occurred
in Hawai`i. [Motion, Mem. in Supp. at 11-12.] In contrast,
Plaintiff argues the Complaint contains allegations of specific
transactions for the purchase of real estate in Hawai`i that
were closed on behalf of Heritage Wealth and for which Heritage
Wealth received commissions, which establish specific personal
jurisdiction. [Mem. in Opp. at 12-13.] Defendants are correct:
Plaintiff has not established personal jurisdiction over
Heritage Wealth.

In exercising personal jurisdiction, a federal
district court is constrained by the Fourteenth Amendment's Due
Process Clause and the long-arm statute of the state in which it
sits. See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592
U.S. 351, 358 (2021); Impossible Foods Inc. v. Impossible X LLC,

80 F.4th 1079, 1086 (9th Cir. 2023).[3] Hawaii's long-arm statute permits Hawai`i courts to assert personal jurisdiction to the extent permitted by the Due Process Clause. See City & Cnty. of Honolulu v. Sunoco LP, 153 Hawai`i 326, 341, 537 P.3d 1173, 1188 (2023)[4] (citing Yamashita v. LG Chem, Ltd., 152 Hawai`i 19, 21-22, 518 P.3d 1169, 1171-72 (2022)).

To comport with the Due Process Clause, a court may exercise personal jurisdiction over a defendant if the defendant has sufficient minimum contacts with the forum state "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Walden v. Fiore, 571 U.S. 277, 283 (2014) (some internal quotation marks omitted) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

> Personal jurisdiction can be either general or specific. A court may exercise general jurisdiction "only when a defendant is 'essentially at home' in the State." Ford Motor Co., 141 S. Ct. at 1024 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). For a corporate defendant, general jurisdiction is paradigmatically appropriate in the state in which the entity is incorporated or where it maintains its principal place of business. See

---

[3] The United States Supreme Court denied certiorari. 144 S. Ct. 2561 (2024).

[4] The United States Supreme Court denied the petitions for writ of certiorari. See Shell PLC v. Honolulu, No. 23-952, 2025 WL 76704 (U.S. Jan. 13, 2025); Sunoco LP v. Honolulu, No. 23-947, 2025 WL 76706 (U.S. Jan. 13, 2025).

> _Daimler AG v. Bauman_, 571 U.S. 117, 137, 134 S.
> Ct. 746, 187 L. Ed. 2d 624 (2014). . . .

_Impossible Foods_, 80 F.4th at 1086.

Plaintiff makes no arguments concerning general jurisdiction, and appears to concede it has not alleged sufficient facts for this Court exercise general jurisdiction over Heritage Wealth. _See_ Mem. in Opp. at 12-13. Therefore, the Court only analyzes specific jurisdiction.

"Specific jurisdiction exists when a case arises out of or relates to the defendant's contacts with the forum." _Ratha v. Phatthana Seafood Co._, 35 F.4th 1159, 1171 (9th Cir. 2022) (brackets, quotation marks, and citation omitted). There are three requirements to establish specific personal jurisdiction over a non-resident defendant:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

_Impossible Foods_, 80 F.4th at 1086 (citation omitted). Plaintiff bears the burden on the first two prongs, and if those prongs are met, each defendant must present a "compelling case" that the exercise of jurisdiction would not be reasonable. _See id._ at 1086-87 (citation and quotation marks omitted). "Personal

jurisdiction must exist for each claim asserted against a defendant." Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004) (citation omitted).

Regarding the first prong of the test, Plaintiff must establish that Heritage Wealth either purposefully availed itself of the privilege of conducting activities in Hawai`i or purposefully directed its activities toward Hawai`i, or engaged in some combination thereof. See Impossible Foods, 80 F.4th at 1088. Which test a court applies "turns on the nature of the underlying claims." Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 979 (9th Cir. 2021) (citation omitted). "When a defendant's conduct primarily occurs outside the forum state," courts within the Ninth Circuit "generally apply the purposeful direction test and look to whether the defendant expressly aimed acts at the forum state knowing that they would harm the plaintiff there." Impossible Foods, 80 F.4th at 1088 (citations omitted). However, a purposeful availment analysis applies when "the defendant has taken deliberate action within the forum state or has created continuing obligations to forum residents." Id. (alteration, quotation marks, and citation omitted). "[P]urposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." Id. (brackets, quotation marks, and citation omitted). Ultimately, both tests

17

"simply frame [a court's] inquiry into the defendant's purposefulness vis-à-vis the forum state, ensuring that defendants are not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Id. at 1089 (citation and internal quotation marks omitted).

Although some of the claims against Heritage Wealth sound in tort, Plaintiff bases the Court's exercise of personal jurisdiction over Heritage Wealth on what appear to be two transactions for loans for the purchase of real estate in Hawai`i. See Mem. in Opp. at 12 (citing Complaint at ¶¶ 26, 30). Specifically, Plaintiff alleges that, when facilitating a loan for the purchase of real estate in Kihei, Hawai`i in February 2024, Wong represented himself as acting on behalf of Plaintiff, but ultimately closed the transaction on behalf of Heritage Wealth and earned Heritage Wealth a commission. [Complaint at ¶ 26.] Additionally, Plaintiff alleges that, in March 2024, Wong and Barcinas "closed a pending transaction for the purchase of real estate in Kihei, Hawaii," and secured the commission for Heritage Wealth. [Id. at ¶ 30.]

Plaintiff alleges that a "substantial part (if not all)" of Wong's and Heritage Wealth's wrongful conduct took place in Hawai`i. See id. at ¶¶ 9, 11. However, Plaintiff's allegations regarding these two transactions that Plaintiff relies on to establish personal jurisdiction over Heritage

18

Wealth are extremely sparse. It is unclear whether the two transactions for loans for the purchase of real estate in Kihei were consummated in Hawai`i, or were made with Hawai`i residents. Even if Heritage Wealth executed a transaction for a loan with a Hawai`i resident, "the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction." Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S. Ct. 2175, 2185 (1985)).

When a plaintiff asserts personal jurisdiction on the basis of one or two contracts, courts look to factors beyond the existence of the contract itself to evaluate if the defendant established minimum contacts with the forum. See Burger King Corp., 471 U.S. at 479 ("It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."). On the basis of Plaintiff's allegations, the Court cannot determine that Heritage Wealth had sufficient minimum contacts with Hawai`i in order for the Court to exercise personal jurisdiction over Heritage Wealth.

Because Plaintiff may be able to allege facts to support personal jurisdiction over Heritage Wealth by providing

19

greater detail regarding Heritage Wealth's minimum contacts with this forum, the claims against Heritage Wealth are dismissed for lack of personal jurisdiction, but with leave to amend.

III. **Remaining Claims Against the Individual Defendants**

Defendants argue that many of Plaintiff's remaining claims against the Individual Defendants – Counts I, II, IV, and V - fail because Plaintiff has not pled sufficient facts to support them. [Motion, Mem. in Supp. at 13-16.] The Court analyzes whether Plaintiff has adequately alleged these claims below.

A.    **Counts I and II – Misappropriation of Trade Secrets**

Plaintiff brings Count I for a violation of the DTSA, which allows the owner of a trade secret to bring a civil action in federal court for misappropriation. See 18 U.S.C. § 1836. Plaintiff brings Count II for a violation of the HUTSA. Plaintiff alleges Wong, Posoz and Barcinas have misappropriated its trade secrets, "includ[ing] its customer lists, vendor lists, and its strategies, processes, and tools to obtain the best rates and terms for its clients." [Complaint at ¶ 41.] Plaintiff also alleges that "Defendants continue to use [Plaintiff's] Confidential Information, including trade secrets[.]" [Id. at ¶ 33.]

Analysis for both HUTSA and DTSA claims is "essentially the same," and both claims require establishing the

same elements. See S&G Labs Haw., LLC v. Graves, CIV. NO. 19-00310 LEK-WRP, 2021 WL 621429, at *9 (D. Hawai`i Feb. 17, 2021) (quotation marks and citation omitted). To prevail on both claims, plaintiff must establish the existence of a trade secret and misappropriation of that trade secret.

> "[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 522 (9th Cir. 1993). The plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1164-65 (9th Cir. 1998) (citing Univ. Analytics v. MacNeal-Schwendler Corp., 707 F. Supp. 1170, 1177 (C.D. Cal. 1989)).

Id. (ellipsis in S&G Labs) (footnote omitted) (quoting Admor HVAC Prods., Inc. v. Lessary, No. CV 19-00068 SOM-KJM, 2019 WL 2518105, at *9 (D. Hawai`i June 18, 2019)).

> Trade secrets include:
>
> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if --
>
> > (A)  the owner thereof has taken reasonable measures to keep such information secret; and

> (B)   the information derives independent
> economic value, actual or potential, from
> not being generally known to, and not being
> readily ascertainable through proper means
> by, another person who can obtain economic
> value from the disclosure or use of the
> information.

18 U.S.C. § 1839(3); see also Haw. Rev. Stat. § 482B-2

(providing similar definition).

> To establish a trade secret, a plaintiff must:
>
> specifically identify the information or item
> claimed as a trade secret, InteliClear[, LLC v.
> ETC Glob. Holdings, Inc.], 978 F.3d [653,] 658
> [9th Cir. 2020)], and further demonstrate the
> measures used to maintain secrecy, and establish
> its [] independent economic value derived from
> being unknown, see 18 U.S.C. § 1839(3)(A-B). The
> Ninth Circuit instructs that "a trade secret may
> consist of a compilation of data, public sources
> or a combination of proprietary and public
> sources." United States v. Nosal, 844 F.3d 1024,
> 1042 (9th Cir. 2016). A plaintiff may demonstrate
> it has taken reasonable measures to maintain
> secrecy by, for example "advising employees of
> the existence of a trade secret, limiting access
> to a trade secret on [a] 'need to know basis,'
> and controlling plant access." United States v.
> Chung, 659 F.3d 815, 825 (9th Cir. 2011). A
> plaintiff may also employ "document destruction
> methods" and "confidentiality agreements." Id. at
> 825 (citing MAI Sys. Corp., 991 F.2d at 521).
> Independent economic value means that the
> information must be "valuable because it is
> unknown to others." Direct Techs., LLC v. Elec.
> Arts, Inc., 836 F.3d 1059, 1071 (9th Cir. 2016)
> (citation omitted) (discussing California law).

HH Assocs., U.S., Inc. v. Evans, 711 F. Supp. 3d 1196, 1213-14

(D. Hawai`i 2024) (some alterations in HH Assocs.),

*reconsideration denied*, CIV. NO. 22-00062 JAO-KJM, 2024 WL
1179019 (D. Hawai`i Feb. 23, 2024).

Plaintiff "may not simply rely upon 'catchall' phrases
or identify categories of trade secrets." See <u>InteliClear</u>, 978
F.3d at 658 (citations omitted). Plaintiff must "describe the
subject matter of the trade secret with **sufficient particularity**
to separate it from matters of general knowledge in the trade or
of special knowledge of those persons . . . skilled in the
trade." See <u>id.</u> (alteration in <u>InteliClear</u>) (citation and
quotation marks omitted).

### 1.  <u>Claims Against Posoz</u>

Plaintiff alleges Posoz "downloaded more than 8,000
files from [Plaintiff]'s servers, including but not limited to
term sheets for [Plaintiff] transactions, [Plaintiff] client
information and fee agreements, and documents regarding leads
for potential [Plaintiff] clients. Mr. Posoz also deleted more
than 400 files from [Plaintiff]'s servers." [Complaint at ¶ 32.]
Defendants argue these allegations are not sufficiently specific
because there are no allegations explaining why term sheets and
leads for potential clients would be trade secrets, and
Plaintiff has not alleged such information is proprietary.
[Motion, Mem. in Supp. at 14-16.]

Posoz is alleged to have downloaded term sheets for
transactions, client information and fee agreements, and

documents regarding leads for potential clients. [Complaint at ¶ 32.] Plaintiff has also alleged:

> In order to compete in the private lending market, [Plaintiff] relies heavily on information that is proprietary, private and/or otherwise confidential in nature ("Confidential Information"), such as its client and prospective client lists and data, its capital partner lists and data, and its strategies, processes, and tools to obtain the best rates and terms for its clients.

[Complaint at ¶ 14 (emphasis omitted).]

Customer lists are not generally protected as a trade secret by itself, particularly when such information is publicly available. WHIC LLC v. NextGen Lab'ys, Inc., 341 F. Supp. 3d 1147, 1162 (D. Hawai`i 2018). However, client lists can qualify as trade secrets, "especially if coupled with other confidential knowledge such as sales history and customer needs and preferences." Id. (quotation marks and citations omitted); see also MAI Sys. Corp., 991 F.2d at 521 (agreeing that the plaintiff's customer database constituted a trade secret); BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., 780 F. Supp. 2d 1061, 1079 (D. Hawai`i 2011) (finding the contact list qualified as a trade secret because "the contact list as alleged has significant economic value because it allows a company or business that would otherwise not have this information [to] gain a distinct advantage through familiarity with the business community").

24

For example, in <u>Vendavo, Inc. v. Price f(x) AG</u>, the district court found the plaintiff did not adequately plead the existence of a trade secret when the plaintiff alleged that its trade secrets included:

> source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements.

Case No. 17-cv-06930-RS, 2018 WL 1456697 at *3-4 (N.D. Cal. Mar. 23, 2018). The district court found these allegations insufficient because the plaintiff "set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that **may** qualify as protectable trade secrets than as any kind of listing of particular trade secrets [the plaintiff] has a basis to believe actually were misappropriated here." <u>Id.</u> at *4.

Here, Plaintiff describes broad categories of materials - term sheets for transactions, client information and fee agreements, and documents regarding leads for potential clients – without providing information as to why these would be trade secrets. <u>See</u> Complaint at ¶ 32. While customer information, fee agreements and documents regarding leads for potential clients can constitute trade secrets, Plaintiff has

25

not explained why its customer information would constitute a trade secret. Courts have found broadly alleged customer lists insufficient. See, e.g., Rescue 1 Fin., LLC v. Complete Debt Relief, LLC, Case No.: SACV 23-00982-CJC (KESx), 2023 WL 6373884, at *4 & n.3 (C.D. Cal. Aug. 24, 2023) (citing cases), opinion clarified, 2024 WL 3081923 (Jan. 29, 2024).

Defendant is correct that these allegations against Posoz are insufficient. Term sheets of transactions, client information and fee agreements, and documents regarding leads for potential clients are broad categories of information, not linked to specific documents. See CleanFish, LLC v. Sims, Case No. 19-cv-03663-HSG, 2020 WL 1274991, at *9-10 (N.D. Cal. Mar. 17, 2020) (finding "detailed customer lists, customer purchasing data, customer sales figures and other related customer purchasing analysis and trends" too general to identify a trade secret (quotation marks and citation omitted)); P2i Ltd. v. Favored Tech USA Corp., Case No. 23-cv-01690-AMO, 2024 WL 4294652, at *4-5 (N.D. Cal. Sept. 24, 2024) (dismissing allegations of trade secrets that included "customer lists and sales strategies" as insufficiently specific). Plaintiff's allegations against Posoz "are too high-level to give the Court or Defendants notice of the boundaries of the alleged trade secret." CleanFish, 2020 WL 1274991, at *9 (citations omitted).

Accordingly, Counts I and II against Posoz are dismissed with leave to amend.

### 2. **Claims Against Wong**

Plaintiff alleges Wong "disseminated . . . protected information, specifically [Plaintiff's] confidential strategies, business methods and processes online through social media posts." [Complaint at ¶ 34.] The Court finds that these allegations of "confidential strategies, business methods and processes" are too broad and do not sufficiently allege a trade secret. See Cisco Sys., Inc. v. Chung, 462 F. Supp. 3d 1024, 1048 (N.D. Cal. 2020) ("[A]llegations that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally **may** qualify as protectable trade secrets are insufficient to state a claim." (citation and quotation marks omitted)) (collecting cases). Accordingly, Counts I and II against Wong are dismissed with leave to amend.

### 3. **Claims Against Barcinas**

The Complaint only contains the allegation that Barcinas misappropriated Plaintiff's trade secrets, "includ[ing] its customer lists, vendor lists, and its strategies, processes, and tools to obtain the best rates and terms for its clients," [Complaint at ¶ 41,] and that Barcinas "wrongfully retained" Plaintiff's trade secrets and "disclosed and/or used"

27

Plaintiff's trade secrets for the benefit of Barcinas or Heritage Wealth, [id. at ¶ 43]. Plaintiff also alleges that Defendants "continue to use" Plaintiff's trade secrets to "divert business" from Plaintiff to Heritage Wealth. [Id. at ¶ 33.] However, Plaintiff does not allege any factual support for these conclusory allegations. It is unclear how Barcinas disclosed or used Plaintiff's trade secrets. The Complaint does not provide any factual allegations as to how or when Barcinas misappropriated a trade secret. Accordingly, Counts I and II against Barcinas are dismissed with leave to amend.

**B.    Count IV – Breach of Contract**

Defendants argue Plaintiff does not adequately allege the breach element of their breach of contract claim against the Individual Defendants. [Motion, Mem. in Supp. at 16-18.]

Pursuant to the respective independent contractor agreements, Hawai`i law governs. See Kenyon Energy, LLC v. Exyte Energy, Inc., CIV. NO. 22-00534-HG-RT, 2024 WL 4361980, at *8 (D. Hawai`i Oct. 1, 2024) ("Pursuant to Hawaii law, the parties' choice of law will govern a contractual relationship where the chosen law shares a nexus with the parties or the contract." (citing Airgo, Inc. v. Horizon Cargo Transp., Inc., 670 P.2d 1277, 1281 (Haw. 1983))); Complaint, Exh. A (Independent Contractor Agreement, effective 7/1/21, between Plaintiff and Wong) ("Wong Agreement") at ¶ 16 (noting Hawai`i law governs);

28

id., Exh. B (Independent Contractor Agreement, effective 1/24/22, between Plaintiff and Posoz) ("Posoz Agreement") at ¶ 16 (noting the same); id., Exh. C (Independent Contractor Agreement, effective 7/7/23, between Plaintiff and Barcinas) ("Barcinas Agreement") at ¶ 16 (noting the same).

Under Hawai`i law, to prevail on its breach of contract claim, Plaintiff must prove: "(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract." See Evergreen Eng'g, Inc. v. Green Energy Team LLC, 884 F. Supp. 2d 1049, 1059 (D. Hawai`i 2012) (quotation marks and citation omitted).

Plaintiff has sufficiently alleged the existence of all three independent contractor contracts, the parties to the contracts, and the contractual provision allegedly violated. See Complaint at ¶¶ 16-19. Plaintiff has also alleged that it performed under the contracts. [Id. at ¶ 67.]

At issue is Defendants' alleged breach of their respective contracts. Plaintiff alleges that Wong, Posoz and Barcinas breached the confidentiality provision of their independent contractor agreements by "among other things, using, taking, and/or disclosing [Plaintiff's] Confidential Information." [Complaint at ¶ 69.] Plaintiff broadly alleges:

29

"Defendants continue to use [Plaintiff's] Confidential
Information, including trade secrets, to divert business from
[Plaintiff] to Heritage Wealth. Further, Defendants continue to
retain and use certain [Plaintiff] resources to conduct business
for Heritage Wealth." [Id. at ¶ 33.]

Plaintiff has not sufficiently alleged that Barcinas
breached the confidentiality clause of the Barcinas Agreement.
While Plaintiff has broadly alleged that the Individual
Defendants used, took, and/or disclosed Plaintiff's Confidential
Information, [id. at ¶ 69,] there are no allegations as to what
action Barcinas took that disclosed Plaintiff's Confidential
Information, thereby breaching the confidentiality clause of the
Barcinas Agreement. Count IV against Barcinas is dismissed with
leave to amend.

However, Plaintiff has sufficiently alleged that Wong
and Posoz breached the confidentiality provisions of their
respective agreements. See id. at ¶ 34 (alleging that Wong
"disseminated protected information, specifically [Plaintiff's]
confidential strategies, business methods and processes online
through social medial posts."); id. at ¶ 25 (alleging that Wong
and Posoz used "the particular terms [that Plaintiff] offered to
[a] client" to "undercut [Plaintiff], close the transaction on
behalf of Heritage Wealth and secure the commission for Heritage
Wealth."); id. at ¶ 32 (alleging Posoz "took and deleted"

30

Plaintiff's Confidential Information on March 14, 2024). The
Motion is denied as to Count IV against Wong and Posoz.

###    C.    __Count V – Deceptive Trade Practices__

Defendants argue Count V should be dismissed against
the Individual Defendants. [Motion, Mem. in Supp. at 18-20.]
Count V is brought pursuant to the UDTPA. Hawai`i Revised
Statutes Section 481A-3(a) provides that:

> A person engages in a deceptive trade practice
> when, in the course of the person's
> business, . . . the person:
>
> > (1)  Passes off goods or services as those
> > of another;
>
> > (2)  Causes likelihood of confusion or of
> > misunderstanding as to the source,
> > sponsorship, approval, or certification of
> > goods or services;
>
> > (3)  Causes likelihood of confusion or of
> > misunderstanding as to affiliation,
> > connection, or association with, or
> > certification by, another; [or]
>
> > . . . .
>
> > (12) Engages in any other conduct which
> > similarly creates a likelihood of confusion
> > or of misunderstanding.

Hawai`i Revised Statutes Section 481A-4 authorizes courts to
grant an injunction against a deceptive trade practice, "in
addition to remedies otherwise available against the same
conduct under the common law or other statutes of this State."
Haw. Rev. Stat. § 481A-4(a), (c).

Preliminarily, in their respective supplemental briefs, Plaintiff and Defendants provide arguments regarding whether Plaintiff may bring a deceptive trade practices claim pursuant to the UDTPA where Plaintiff's customers were the ones deceived by the trade practice, rather than Plaintiff itself. See dkt. nos. 35, 36. Claims under Chapter 481A "do not require a showing of actual injury but only that there is likelihood of injury." See Balthazar v. Verizon Haw., Inc., 109 Hawai`i 69, 77, 123 P.3d 194, 202 (2005). A claim for deceptive trade practices may properly be brought by Plaintiff, even though Plaintiff does not allege it was deceived by the trade practice, because Plaintiff is "likely to be damaged" by the deceptive trade practice, see Haw. Rev. Stat. § 481A-4(a), vis-à-vis Plaintiff's losing its customers to competitors. For example, in Trendtex Fabrics, Ltd. v. NTKN, Inc., a business claimed a competitor made statements that would mislead consumers and deter consumers from purchasing its products, thereby violating Section 481A-3(a)(8). 735 F. Supp. 3d 1260, 1280 (D. Hawai`i 2024). Although the district court noted the business would need to show at trial other elements of the claim, including whether the alleged deceptive trade practices are likely to damage the business, the claim survived the summary judgment motion. Id. at 1280-81; see also Gas Co., LLC v. Amerigas Propane, L.P., CIVIL 16-00366 LEK-KSC, 2017 WL 3613986, at *1, *4 (D. Hawai`i Jan.

32

27, 2017) (denying the motion to dismiss with respect to a
counterclaim for deceptive trade practices pursuant to Chapter
481A for "unfair trade practices intended to discourage and
prevent customers from contracting with competitors").

Turning to whether the claim was sufficiently alleged
against the Individual Defendants, Defendants argue that there
are no specific allegations concerning Barcinas's or Posoz's
engagement in deceptive practices. As to Wong, Defendants argue
Plaintiff has failed to allege a likelihood of confusion by
Plaintiff's customers, or that Wong's actions caused Plaintiff's
customers to do something they would not otherwise do.
Defendants point out that customers closing a transaction with
Wong would have to sign final closing documents, and therefore
would know the entity that was closing the transaction. [Motion,
Mem. in Supp. at 18-20.]

Preliminarily, the Court applies Federal Rule of Civil
Procedure 9(b) to Plaintiff's claim brought pursuant to
Chapter 481A. Courts in this district and the Ninth Circuit have
found that Rule 9 applies to state law claims for unfair and
deceptive practices ("UDAP") under Hawai`i Revised Statutes
Chapter 480 based on fraudulent conduct, which are similar to
UDTPA claims based on fraudulent conduct. See Aquilina v.
Certain Underwriters at Lloyd's Syndicate #2003, 407 F. Supp. 3d
1051, 1066 (D. Hawai`i 2019) (noting that "[b]oth the Ninth

33

Circuit and this Court have held that state-law UDAP claims must be pleaded with particularity when the claims are based on fraudulent conduct") (citing <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1122 (9th Cir. 2009), <u>Smallwood v. NCsoft Corp.</u>, 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010)); <u>see also</u> <u>Maeda v. Pinnacle Foods Inc.</u>, 390 F. Supp. 3d 1231, 1251-52 (D. Hawai`i 2019) (stating the plaintiff's UDAP claim must comply with Rule 9(b)). While the UDAP claims in <u>Aquilina</u> and the cases <u>Aquilina</u> relies upon are brought pursuant to Chapter 480, not Chapter 481A, the reasoning in those cases applies to Plaintiff's UDTPA claim. Here, because Plaintiff's Count V claim is premised upon fraud, <u>see</u> Complaint at ¶¶ 72-74, the Court finds that Rule 9(b)'s requirements must be met.

Rule 9(b) requires that the circumstances constituting fraud be plead with particularity. Fed. R. Civ. P. 9(b); <u>see</u> <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003). Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." <u>Vess</u>, 317 F.3d at 1106 (9th Cir. 2003) (alteration in <u>Vess</u>) (citation and internal quotation marks omitted).

> Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. <u>Cooper v. Pickett</u>, 137 F.3d

34

> 616, 627 (9th Cir. 1997) (internal quotation
> marks omitted). "[A] plaintiff must set forth
> **more** than the neutral facts necessary to identify
> the transaction. The plaintiff must set forth
> what is false or misleading about a statement,
> and why it is false." Decker v. GlenFed, Inc. (In
> re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548
> (9th Cir. 1994).

Id. (alteration in Vess). When the fraud involves multiple

defendants, the pleader may not lump them together, but must

"differentiate their allegations" and "inform each defendant

separately of the allegations surrounding his alleged

participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756,

764–65 (9th Cir. 2007) (per curiam) (quotation marks and

citation omitted). However, Rule 9(b)'s requirements may be

relaxed regarding matters that are exclusively within the

opposing party's knowledge. Rubenstein v. Neiman Marcus Grp.

LLC, 687 F. App'x 564, 567 (9th Cir. 2017) (quoting Moore v.

Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir.

1989)). Here, the Complaint is sufficient under Rule 9(b) "'if

it identifies the circumstances constituting fraud so that a

defendant can prepare an adequate answer from the allegations.'"

See id. at 568 (quoting Moore, 885 F.2d at 540).

Under this standard, Plaintiff sufficiently alleges

that Barcinas and Posoz engaged in deceptive practices.

Plaintiff alleges all of the Individual Defendants have engaged

in deceptive trade practices "[b]y using their roles and titles

35

at [Plaintiff] to facilitate private loan transactions for Heritage Wealth," [Complaint at ¶ 73,] and that Defendants "engaged [Plaintiff's] customers and vendors on numerous occasions under the guise of representing [Plaintiff] and that the loan transaction would be brokered through [Plaintiff], when in reality, Defendants were brokering the loan through Heritage Wealth," [id. at ¶ 35]. As to Barcinas in particular, Plaintiff alleges that Barcinas worked with Posoz and Wong to close transactions on behalf of Heritage Wealth, not Plaintiff. See Complaint at ¶¶ 28, 30. Regarding Posoz, Plaintiff alleges that Posoz closed transactions on behalf of Heritage Wealth, not Plaintiff. See Complaint at ¶¶ 25, 28-29. These allegations are sufficient to allege Posoz and Barcinas engaged in deceptive practices, and allow Posoz and Barcinas to "prepare an adequate answer from the allegations." See Rubenstein, 687 F. App'x at 568.

As to Wong, Defendants argue that Plaintiff has not sufficiently alleged a deceptive act, specifically "a likelihood of confusion or misunderstanding by [Plaintiff's] customers or that Wong's alleged deception caused [Plaintiff's] customers to do that which they would not otherwise do." [Motion to Dismiss, Mem. in Supp. at 19.] While it is true Plaintiff has not alleged "a likelihood of confusion" under the last catch-all section of the statute, see Haw. Rev. Stat. § 481A-3(a)(12), Plaintiff has

36

alleged that Wong "[p]asse[d] off . . . services as those of another[.]" See Haw. Rev. Stat. § 481A-3(a)(1); Complaint at ¶ 26. Accordingly, Plaintiff need not allege likelihood of confusion in particular.

Similarly, Plaintiff need not specifically allege that Plaintiff's customers were caused to do something they would not otherwise do. Because Chapter 480 does not contain a statutory definition for "deceptive practice," the Hawai`i Supreme Court has turned to federal courts' definition of "deceptive practice" in analyzing Chapter 480 UDAP claims. See Courbat v. Dahana Ranch, Inc., 111 Hawai`i 254, 261, 141 P.3d 427, 434 (2006); id. at 262, 141 P.3d at 435 (citing federal court cases adopting the three-prong test for "deception" from In re Cliffdale Assocs., Inc., 1984 WL 565319, 103 F.T.C. 110 (1984), and adopting the test); see also Balthazar, 109 Hawai`i at 77, 123 P.3d at 202 (explaining that the Hawai`i Supreme Court "has referred to the meaning of a deceptive practice by citing the definition employed by federal courts with respect to an act causing, as a natural and probable result, a person to do that which he [or she] would not otherwise do." (brackets in original) (citation and internal quotation marks omitted)). Because the deceptive trade practices are expressly enumerated in Section 481A-3(a), and Plaintiff has sufficiently alleged that Wong "[p]asse[d] off . . . services as those of another[,]" see Haw. Rev. Stat.

§ 481A-3(a)(1), Plaintiff need not specifically allege that Plaintiff's customers were caused to do something they would not otherwise do. While Plaintiff must allege a likelihood of injury, it has done so. See Balthazar, 109 Hawai`i at 77, 123 P.3d at 202; Complaint at ¶¶ 74-75. Defendants' argument in this regard fails.

Finally, Defendants argue Plaintiff is not entitled to damages for Count V. [Motion, Mem. in Supp. at 20.] Plaintiff concedes there is not a claim for damages pursuant to Hawai`i Revised Statutes Section 481A-4(a), and Plaintiff is willing to strike paragraph 75 of the Complaint. However, Plaintiff does not concede its right to pursue damages insofar as they are available under common law or other Hawai`i statutes. [Mem. in Opp. at 19-20.] Defendants do not dispute this. Accordingly, Plaintiff may not recover damages stemming from Plaintiff's claim pursuant to Hawai`i Revised Statutes Section 481A-4(a). However, this does not foreclose Plaintiff from seeking damages stemming from the conduct that is the basis of Count V insofar as the conduct supports Plaintiff's other claims brought under common law or other Hawai`i statutes.

Accordingly, the Motion is granted as to Count V only to the extent that Plaintiff may not seek damages for Count V, and is denied as to Count V in all other respects.

## CONCLUSION

On the basis of the foregoing, the Motion to Dismiss Plaintiff Kécō Capital, LLC's Complaint, filed September 20, 2024, is GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED IN PART AND DENIED IN PART insofar as: the claims against Heritage Wealth are dismissed with leave to amend; Counts I, II, III, VI, and VIII are dismissed with leave to amend; and Count IV against Barcinas is dismissed with leave to amend. The Motion is DENIED as to Count IV against Wong and Posoz. The Motion is GRANTED insofar as Plaintiff may not seek damages for Count V, but the Motion is DENIED as to Count V in all other respects. Plaintiff is GRANTED leave to file an amended complaint by **March 27, 2025.** Plaintiff's leave to amend is limited to addressing the defects identified in this Order. Should Plaintiff not timely file an amended complaint for some or all the claims for which leave to amend has been granted, then those claims are dismissed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 24, 2025.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

KECO CAPITAL, LLC VS. AIDAN WONG, ET AL; CV 24-00313 LEK-RT;
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS PLAINTIFF KÉCŌ CAPITAL, LLC'S COMPLAINT